Argued and submitted October 15, affirmed Decmeber 1, 1980,
reconsideration denied January 22,
petition for review denied March 4, 1981 (290 Or 551)

In the Matter of Darnell, Aira Linda, a child.

## STATE ex rel JUVENILE DEPARTMENT OF MULTNOMAH COUNTY et al,

*Respondents,*

*v.*

## DARNELL,

*Appellant.*

(No. 61,745, CA 17515)

619 P2d 1349

David L. Slader, Portland, argued the cause and filed the briefs for appellant.

James C. Rhodes, Assistant Attorney General, Salem, argued the cause for respondent Juvenile Department. With him on the brief were James M. Brown, Attorney General, John R. McCulloch, Mr., Solicitor General, and William F. Gary, Deputy Solicitor General, Salem.

Harold C. Hart, Portland, waived appearance for respondent child.

Before Schwab, Chief Judge, and Warden and Warren, Judges.

WARDEN, J.

**WARDEN, J.**

The mother appeals from an order of the circuit court terminating her parental rights in her daughter, age four.[1] We affirm.

We review the facts *de novo* on the record, ORS 419.561(4), 19.125(3), giving due regard to the findings of the trial court, which had the opportunity to observe the witnesses. *State ex rel Juv. Dept. v. Maves,* 33 Or App 411, 576 P2d 826 (1978).

The petition for termination alleged in pertinent part the following:

"The child is within the jurisdiction of the Court by reason of the following facts:

"A. On March 8, 1979, nunc pro tunc December 22, 1978, the above-named child was found to be within the jurisdiction of the court based on findings that her condition and circumstances were such as to endanger her welfare.

"B. On March 8, 1979, Nunc Pro Tunc December 22, 1978, the court terminated the alleged paternal rights of Samuel David Darnell.

"C. Linda Thain Darnell, the mother of Aira Linda Christ Darnell, the above-named child, in [sic: is] unfit by reason of conduct or condition seriously determental [sic] to the said child and integration of the child into the home of the parent, is improbable in the foreseeable future due to conduct or conditions not likely to change, including, but not limited to:

"I. Linda Thain Darnell and her husband Samuel David Darnell participated in religious rituals from approximately 1972 until 1977 in which both Linda Thain Darnell and Samuel David Darnell acclaimed that Samuel David Darnell was Jesus Christ, and that Linda Thain Darnell was the Holy Spirit.

"* * * * *

"VI. Linda Thain Darnell suffers from mental or emotional problems which prevent her from providing adequate or proper care for Aira Linda Christ Darnell, the above-named child.

"VII. During the past several years, Linda Thain Darnell has used narcotics and dangerous drugs.

---

[1] *See also State v. Linda Thain Darnell,* 49 Or App 461, 619 P2d 1349 (1980).

"VIII. During those times Linda Thain Darnell had custody of Aira, she failed to provide her with an adequate environment to meet Aira's physical and emotional needs, and she subjected Aira to physical abuse and/or inappropriate discipline.

"IX. There has been a lack of effort on the part of the mother to effect a lasting adjustment after reasonable efforts by available social agencies for such extended duration of time that it appears reasonable that no lasting adjustment can be effected."[2]

---

[2] *See* ORS 419.523(2) and (3), which provide:

"(2) The rights of the parent or parents may be terminated as provided in subsection (1) of this section if the court finds that the parent or parents are unfit by reason of conduct or condition seriously detrimental to the child and integration of the child into the home of the parent or parents is improbable in the foreseeable future due to conduct or conditions not likely to change. In determining such conduct and conditions, the court shall consider but is not limited to the following:

"(a) Emotional illness, mental illness or mental deficiency of the parent of such duration as to render it impossible to care for the child for extended periods of time.

"(b) Conduct toward any child of an abusive, cruel or sexual nature.

"(c) Addictive use of intoxicating liquors or controlled substances.

"(d) Physical neglect of the child.

"(e) Lack of effort of the parent to adjust the circumstances of the parent, conduct, or conditions to make the return of the child possible or failure of the parent to effect a lasting adjustment after reasonable efforts by available social agencies for such extended duration of time that it appears reasonable that no lasting adjustment can be effected.

"(3) The rights of the parent or parents may be terminated as provided in subsection (1) of this section if the court finds that the parent or parents have failed or neglected without reasonable and lawful cause to provide for the basic physical and psychological needs of the child for one year prior to the filing of a petition. In determining such failure or neglect, the court shall consider but is not limited to one or more of the following:

"(a) Failure to provide care or pay a reasonable portion of substitute physical care and maintenance if custody is lodged with others.

"(b) Failure to maintain regular visitation or other contact with the child which was designed and implemented in a plan to reunite the child with the parent.

"(c) Failure to contact or communicate with the child or with the custodian of the child. In making this determination, the court may disregard incidental visitations, communications or contributions."

The trial court granted the mother's motion to strike several other portions of the petition.

After a lengthy hearing, the trial court entered the following order:

"The above-named child is within the jurisdiction of the Court by reason of the following facts:

"This matter came before the court upon the child's petition to terminate the parental rights of Linda Darnell * * *. Based upon the testimony of the witnesses the Court makes the following findings: *Linda Darnell is not a credible witness; Linda Darnell is not amenable to supervision of this Court;* Linda Darnell used drugs in 1978—this finding based upon the testimony of witnesses that the Court finds are credible; Linda Darnell committed perjury regarding the activities of David Darnell; *Linda Darnell has maintained an uninterrupted association with David Darnell to the date of this hearing;* Linda Darnell failed to provide the child with an adequate environment to meet the child's physical and emotional needs; Linda Darnell has failed to effect a lasting adjustment of her circumstances after reasonable efforts by available social agencies for such extended durations of time that it appears reasonable no lasting adjustment can be effected; *Linda Darnell is unwilling or unable to disassociate herself from David Darnell and her continuation of the relationship with David Darnell is detrimental to the best interests of the child.* The Court further finds that the State has proved by a preponderance of the evidence Allegations A, B and C-I, VI, VII, VIII and IX, and based upon these findings the Court is satisfied by a preponderance of the evidence that the termination of Linda Darnell's rights as a parent is in the best interests of the child, Aira Linda Christ Darnell." (Emphasis added.)

On appeal the mother argues that the evidence presented at the hearing does not support the termination order. In particular, she stresses (1) her cooperation with Children's Services Division (CSD) in adjusting her circumstances to make possible the return of her daughter into the home; (2) the lack of reasonable efforts by CSD to help her make these adjustments; and (3) reports by her caseworker and a child psychiatrist detailing her positive qualities as a mother and recommending against termination.

We need not and do not detail here the abundant evidence that leads us to affirm the trial court. *State ex rel Juv. Dept. v. Navarette,* 30 Or App 909, 569 P2d 26 (1977).

A major issue in this case is the existence of a continuing relationship between the mother and David Darnell, the mother's former husband. In a 1978 proceeding, David Darnell's parental rights in the child were terminated.[3] The mother was advised by CSD that in order to improve her chances of regaining custody of her daughter she should, among other things, have her marriage with David dissolved and completely sever relations with him. As shown above, the trial court found that as of the time of the hearing the mother had either failed or refused to do so. The mother admits that as of the time of the hearing she and David were living together and sharing the same bed. Her continued close relationship with David contradicts her previous assertions to CSD and to a child psychiatrist who examined the mother and child that she had broken her association with David Darnell and established an independent life. The mother's continued relationship with David Darnell is, as found by the trial court, detrimental to the best interests of the child and inconsistent with continuing her parental rights.[4]

The recommendations of the CSD caseworker and the child psychiatrist that the child be returned to the mother were expressly based upon their acceptance of the mother's misrepresentations of her intent to disassociate herself from David Darnell. They reviewed their recommendations after disclosure of the falsity of the mother's statements of intent. Vern Welter, the mother's CSD caseworker, testified that he changed his plan to return the child to the mother when he found out that the mother had lied to him about her continued relationship with David. Dr. Sack, the child psychiatrist, testified that he would still recommend that the child be returned to the mother "as long as the Court kept active supervision of the case." The trial court found, however, that the mother is not amenable to the supervision of the court. It is uncontroverted that in 1978 the mother removed the child from the state for

---

[3] David Darnell is not the biological parent of the child. He is a transsexual and is biologically incapable of fathering a child.

[4] Cf. *State ex rel Juv. Dept. v. East,* 38 Or App 59, 70, 589 P2d 744, *rev den* (1979) (mother's continuing relationship with child abuser inconsistent with continuing her parental rights.)

several months, disobeying a direct order of the court. We conclude that the trial court correctly found that continued supervision of the mother and child by the court is not practicable.

The mother vigorously argues that CSD failed to carry out its statutory duty to exert "reasonable efforts" to aid the mother in adjusting her circumstances to make the return of the child possible. ORS 419.523(2)(e). She points to CSD's failure to recommend or provide counseling or parenting classes. It appears from the record that in declining to recommend counseling, CSD and Dr. Sack relied upon the mother's declarations of her newfound independence from David Darnell, later shown to be untrue. Dr. Sack did not recommend parenting classes because of his positive evaluation of the mother's parenting capabilities during his sessions with the mother and child. Thus, CSD's failure to recommend such supportive services for the mother does not show a lack of reasonable effort, but merely that the agency's workers and cooperating professionals had been deceived by the mother, who was skilled at portraying herself as a person whose primary concern was the welfare of the child rather than her relationship with David Darnell. CSD did make continuing efforts to arrange for visitation, although scheduling problems occasionally hindered these efforts. We conclude that under the circumstances CSD did make reasonable efforts to help the mother adjust her circumstances to make the return of the child to the home possible.

We hold that the trial court did not err in ordering the mother's parental rights in the child terminated.

Affirmed.